USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Douglas R. Caron,

                Plaintiff,

     –v–

TD Ameritrade, *et al.*,

                Defendants.

19-cv-9015 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff brings civil and criminal claims against TD Ameritrade and various clearing house organizations under state and federal law for failing to deliver to him physical share certificates of his securities purchase in Bancorp International Group, as well as fraudulently concealing the fact that that they did not have the authentic, registered share certificates in their possession, from both him and an arbitration panel. Defendants have moved to dismiss all of Plaintiff's claims on various grounds. For the reasons described below, Defendants motions are GRANTED.

### I. Background

    The following facts are drawn from Plaintiff's Amended Complaint, *see* Dkt. No. 17, and assumed to be true for the purpose of resolving this Motion to Dismiss. *See McCarthy v. Dun & Bradstreet Corp*., 482 F.3d 184, 191 (2d Cir. 2007).

    Plaintiff Douglas R. Caron is a client of Defendant TD Ameritrade Inc. *Id.* at ¶ 8. Sometime between June 15, 2005 and July 12, 2005, Plaintiff purchased 463,372 shares in Bancorp International Group Inc. ("Bancorp") for $4,082.63 through the TD Ameritrade

platform acting as a self-directed investor.  *Id.*  Though Plaintiff is the beneficial owner of the BCIT shares, the shares are held in trust in certificate form by Defendants, The Depository Trust & Clearing Corporation, The Depository Trust Company and Cede & Co (collectively, "DTCC"), which are organizations that hold securities in order to facilitate the clearance and settlement of securities transactions.  *Id.* at ¶ 3.

On August 11, 2005, shortly after Plaintiff bought his shares in Bancorp, Defendants DTCC imposed a "lock" on certain share certificates in the company, including those owned by Plaintiff.  *Id.* at ¶ 11.  A "lock" means that share certificates cannot go in or out of DTCC.  *Id.*  Defendants DTCC imposed the lock on Bancorp certificates because they learned that Bancorp had been subjected to a "corporate hijacking" by fraudsters who were printing unregistered, unauthorized share certificates for the company.  *Id.* at ¶¶ 9-10.

In September 2011, Plaintiff requested that Defendants deliver him his Bancorp share certificates, but he was told by Defendants that the certificates could not be delivered due to the DTCC lock.  *Id.* at ¶ 15.  Plaintiff maintains that the lock in fact does not prevent all transactions, because owners can still execute trades outside of DTCC using physical share certificates.  *Id.* at ¶ 12.  Therefore, he demanded that Defendants deliver him the physical share certificates despite the lock.  *Id.*  He also maintains that Defendants have failed to replace the unregistered, counterfeit Bancorp certificates with real ones, and that Defendants have attempted to fraudulently conceal that fact by falsely claiming that they hold legitimate Bancorp share certificates on deposit. *Id.* at ¶ 14.  Defendants have denied this allegation and maintain that they cannot not deliver the shares because of the DTCC lock.  *Id.* at ¶ 16.

On March 2, 2012, Plaintiff filed a claim in Washington State court against Defendant TD Ameritrade to compel it to deliver to him his physical share certificates in Bancorp and to

ensure that those shares are registered directly in his name on the books of Bancorp. *Id.* at ¶ 17. The Court granted Defendant TD Ameritrade's motion to compel arbitration before the Financial Industry Regulatory Authority (FINRA), and the case moved to arbitration. *Id.* at ¶ 19.

During the FINRA arbitration, Plaintiff contends that executives at Defendants TD Ameritrade and DTCC testified in a materially false and misleading manner that Defendants DTTC held enough legitimate share certificates in Bancorp to cover the trades done by Defendant TD Ameritrade. *Id.* at ¶ 20. Plaintiff explains that executives from Bancorp have stated that DTCC in fact holds an insufficient amount of certificates to cover those trades. *Id.* at ¶ 21. Moreover, Plaintiff claims that in 2017 in a New York Civil Court case, *Winter v. Lafferty* (cv-010297), Defendants DTCC produced copies of 23 certificates that Plaintiff says they falsely swore to the court were on deposit at DTCC. *Id.* at ¶ 22. Plaintiff maintains that all but 2 of the 23 certificates were issued and cancelled in 1999, well before the lock on Bancorp shares was imposed. *Id.* at ¶ 22.

Plaintiff filed suit in this Court *pro se* on September 26, 2019. *See* Dkt. No. 1. In his Amended Complaint, Plaintiff maintains that Defendant TD Ameritrade was "negligent and failed in their fiduciary duty to the plaintiff" by failing to ensure that Defendants DTCC held genuine, registered certificates. Dkt. No. 17 at ¶ 35. Plaintiff also alleges that Defendants knew that the "DTCC depository" had been compromised by the Bancorp fraud and that they "have done nothing about it and lied to cover this up." *Id.* at ¶ 36. Plaintiff asserts a variety of federal and state civil and criminal claims and seeks "relief from a prior judgment or order," as well as "monetary settlement of not less than $583,297" along with punitive damages. *Id.* at ¶ 7.

Defendant TD Ameritrade filed a motion to dismiss the Amended Complaint or compel arbitration on January 13, 2020. *See* Dkt. No. 19. Defendants DTCC filed a motion to dismiss

3

the Amended Complaint on the same day. *See* Dkt. No. 24. Both parties move to dismiss on various grounds. *See* Dkt. Nos. 19, 24. Since that time, various individuals have made motions to intervene in this case. *See* Dkt. Nos. 33, 35, 46, 47, and 53.

## II.     Discussion

The Court interprets Plaintiff's Amended Complaint to be asserting two types of claims. First, Plaintiff asks this Court to set aside "prior judgments or order[s]" against him. Dkt. No. 17 at ¶ 6. As described below, neither Federal Rules of Civil Procedure Rule 60(b) nor the Federal Arbitration Act can provide him such relief.

Second, Plaintiff asserts new claims for (a) violations of 18 U.S.C. §§ 472, 473, 1001, 1018, 1503, 1519, and 1520 against both Defendants; (b) falsification of evidence against both Defendants; (c) common law fraud and violations of SEC Rule 10b-5 against both Defendants; and (d) breach of fiduciary duty against Defendant TD Ameritrade. *Id.* at ¶¶ 44-76. These claims fail because (1) Plaintiff has no standing to bring claims for violations of those criminal statutes, (2) there is no basis to issue sanctions under Rule 11 for the alleged falsification of evidence, (3) Plaintiff is barred from bringing the fraud and breach of fiduciary duty claims against Defendant TD Ameritrade by the doctrine of *res judicata*, and (4) Plaintiff has failed to state a cause of action for common law fraud or violations of SEC Rule 10b-5 against either Defendant.

Lastly, the Court dismisses the motions to intervene because they are moot now that Plaintiff's Complaint has been dismissed and because they should not have otherwise been granted under Federal Rule of Civil Procedure Rule 24(b).

### A. Plaintiff's claim for relief from prior judgments or orders

4

In his Amended Complaint, Plaintiff states that he "seeks relief from a prior judgment or order, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure" because "the falsification by TDA and DTCC came to light after a final judgment or order" and provides a basis to reopen the case. Dkt No. 17 at ¶ 6. Though Plaintiff does not explicitly state which judgment or order he is seeking relief from, the Amended Complaint references, albeit indirectly, the Washington State court decision to compel arbitration, which occurred sometime around 2012, and the FINRA arbitration, which Defendant TD Ameritrade explains resulted on September 8, 2016 in the unfavorable ruling for Plaintiff that Defendants did not have to provide Plaintiff with the share certificates. *See* Dkt. No. 21 at 9.

To the extent Plaintiff seeks for this Court to vacate the order from the Wisconsin State court compelling arbitration, the Federal Rules of Civil Procedure Rule 60(b) provides no relief. Rule 60(b) allows for a federal *district court* to set aside a judgment that was rendered *in that court*. *See Bankers Mortg. Co. v. United States*, 423 F.2d 73, 78 (5th Cir. 1970) ("The motion for relief from final judgment must be filed in the district court and in the action in which the original judgment was entered."); *Palacio v. United States*, 219 F. App'x 811, 812 (10th Cir. 2007). *Cf. United States v. Foy*, 803 F.3d 128, 135 (3d Cir. 2015) ("There may be circumstances in which a district court has jurisdiction over a Rule 60 motion or an independent action seeking relief from a judgment entered by another court, such as where a party to initial proceedings registers a judgment obtained in another court pursuant to 28 U.S.C. § 1963."). At any rate, a motion under Rule 60(b) made on the grounds of newly discovered evidence or fraud must be made "no more than a year after the entry of the judgment or order." Fed. R. Civ. Proc. Rule 60(b). That deadline has well passed, as Plaintiff filed his Complaint on September 26, 2019, around eight years after the judgment. *See* Dkt. No. 1.

5

Assuming Plaintiff instead seeks to overturn the FINRA arbitration award, there can be no relief there either. "Although Rule 60(b) may be used to modify a judgment confirming an arbitration award, it is well-established that Rule 60(b) does not apply to the arbitration award itself." *Cong. Sec., Inc. v. Fiserv Sec., Inc.*, 2004 WL 829028, at *2 (S.D.N.Y. 2004) (cleaned up). Plaintiff would have to bring his claim under the Federal Arbitration Act, which permits a court to vacate an award "where the award was procured by corruption, fraud, or undue means," 9 U.S.C. 10(a)(1). *See Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) ("[T]he FAA sets out the exclusive statutory grounds for vacating a commercial arbitration award.") (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008)). But under the FAA as well, Plaintiff's claim is untimely. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within *three months* after the award is filed or delivered.") (emphasis added). Plaintiff filed his Complaint nearly three years after the Arbitration award was issued on September 8, 2016. *See* Dkt. Nos. 1, 17.

Plaintiff therefore has failed to state a claim for relief from a prior order or judgment. The Court turns to the new claims Plaintiff asserts against Defendants.

### B. Plaintiff's claims for violations of criminal law, falsification of evidence, fraud, and breach of fiduciary duty

In addition to seeking relief from prior judgments or orders against him, Plaintiff's Amended Complaint, submitted *pro se*, appears to raise various new criminal and civil claims against Defendants under federal and state law, as well as a request for sanctions. Those claims and request fail for the following reasons.

### 1. Plaintiff does not have standing to assert claims for violations of the criminal statutes referenced in his Amended Complaint

6

In his Amended Complaint, Plaintiff asserts that Defendants have violated various criminal statutes generally involving counterfeit securities, fraudulent concealment, obstruction of justice, and falsifying documents. *See* Dkt. No. 17 at ¶ 53, 67-72 (citing 18 U.S.C. §§ 472, 473, 1001, 1018, 1503, 1519, or 1520). However, Plaintiff cannot assert these claims. As a private individual, Plaintiff does not have standing to enforce the criminal laws of the United States. *See Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir.1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints.").

While it is true that sometimes courts have found an implied private right of action in federal statutes, *see Touche Ross & Co. v. Redington*, 442 U.S. 560, 568-69 (1979), there is no private right of action in any of the statutes referenced in Plaintiff's Amended Complaint. *See Hariprasad v. Master Holdings Inc.*, 2019 WL 5092464, at *1 (2d Cir. Oct. 11, 2019); *Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992). *See also Daniel v. Safir*, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001) ("[U]nless specifically provided for, federal criminal statutes rarely create private rights of action.") (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979)). These claims are dismissed with prejudice.

**2. Plaintiff has not provided a basis for Rule 11 sanctions**

Plaintiff states in his Amended Complaint that Defendants "have been engaged in the wholesale falsification of evidence which has had a detrimental impact on the litigation process," and asks the Court to impose sanctions against Defendants for their alleged "fraud on the Court." Dkt. No. 17 at ¶¶ 61-65. However, the power to sanction litigants is "necessarily vested in courts to manage *their own affairs* so as to achieve the orderly and expeditious disposition of cases," *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962) (emphasis added), not to punish litigants

for conduct that occurred in a different forum. The Court cannot not use its inherent authority to impose sanctions for Defendants alleged misconduct before the FINRA arbitrators or another forum.

> **3. Plaintiff is barred by the doctrine of *res judicata* from bringing claims for breach of fiduciary duty or fraud against Defendant TD Ameritrade.**

Plaintiff alleges that Defendant TD Ameritrade was "negligent and failed in their fiduciary duty Plaintiff" for failing to ensure that Defendants DTCC had physical copies of authentic, registered certificates for his shares. Dkt. No. 17 at ¶¶ 35-36. Plaintiff also argues that Defendants committed common law fraud fraud when they made material misstatements that DTCC had registered, authentic share certificates. *See* Dkt. No. 17 at ¶ 48 ("Defendants have misrepresented the number of real Bancorp share certificates" and "fraudulently claimed that the DTCC lock prevents delivery of the shares."); *Id.* at ¶¶ 44-46. In addition, Plaintiff references SEC Rule 10b-5 in his opposition to Defendants DTCC's motion. *See* Dkt. 30 at ¶ 1. Though he does not explicitly reference this source of law in his Amended Complaint, the Court will interpret it as alleging claims for fraud both under common law and under SEC Rule 10b-5. *See Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y.1998) ("Although material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of pro se complaints permit a court to consider allegations of a pro se plaintiff in opposition papers on a motion where . . . consistent with the complaint.").

All of these claims against Defendant TD Ameritrade are barred by the doctrine of *res judicata*, which holds that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). While "[g]enerally res judicata is an affirmative defense to be pleaded in the defendant's answer," it may be asserted in a Rule 12(b)(6) motion to dismiss

8

"when all relevant facts are shown by the court's own records, of which the court takes notice." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).  Here, the facts asserted in Plaintiff's Amended Complaint alone, along with facts to which he has consented to judicial notice, are sufficient to demonstrate that his claims are barred by res judicata.

Defendants have met the requisite showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiff or those in privity with plaintiff; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen*, 499 U.S. at 94) (brackets removed).

First, the arbitration before FINRA between Plaintiff and Defendant TD Ameritrade was a final adjudication on the merits.  As Plaintiff's claims are brought under diversity jurisdiction, the Court applies the law of collateral estoppel in New York, *see BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir. 1997) ("The governing law in this diversity case is that of New York, where the district court sits: specifically, New York's law on the collateral estoppel effect of an arbitration award.").  Under New York law, an arbitration award constitutes a previous adjudication on the merits.  *See id; Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir.1997) ("[R]es judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award" under New York law.).  As to the second element, the FINRA arbitration included both TD Ameritrade and Plaintiff.

The third element, that the claims asserted in the subsequent action either were or could have been raised in the first, is also satisfied for both claims.  As to his breach of fiduciary duty claim, Plaintiff does not contest that the issues of whether TD Ameritrade owed Plaintiff a

9

fiduciary duty, and if it breached that duty by failing to obtain the physical certificates for Plaintiff or discover whether DTCC had the correct certificates, were within the scope of his arbitration agreement with TD Ameritrade, and therefore should properly have been brought at that time.  Indeed, it appears that this claim *was* in fact litigated and resolved during the FINRA arbitration.  The arbitration award, which the Court considers part of the Amended Complaint because it was "attached to it as an exhibit," *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002), specifically says that "Respondent did not breach any duties owed to Claimant" and that "Respondent fulfilled all responsibilities to claimant." Dkt. No. 17, Exhibit 3.  Plaintiff is therefore barred from relitigating his breach of fiduciary duty claim in another forum.

Plaintiff's fraud claims are also barred by *res judicata*.  To begin, the FINRA arbitration was an appropriate forum for Plaintiff's fraud claims.  While Plaintiff maintains that the "FINRA arbitration process is not suitable or effective for a case of conspiracy to defraud and commit perjury" and that it is "outside the FINRA remit," Dkt. 31 at ¶ 12, he provides no source of law to support this proposition.  To the contrary, courts in this jurisdiction will compel arbitration of common law fraud claims before FINRA.  *See In re Lehman Bros. Sec. & ERISA Litig*., 706 F. Supp. 2d 552, 560 (S.D.N.Y. 2010).  SEC rule 10b-5 claims are no exception.  *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-238 (1987) (holding that courts can compel parties to arbitrate their claims under the Securities and Exchange Act, including SEC Rule 10b-5 claims, because the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.").

Moreover, Plaintiff's fraud claims arose from the same "nucleus of operative fact" as his other claims before FINRA and therefore he was required to bring them at that time.  *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000).   The two issues of (1) whether

Defendants were required to procure the certificates or otherwise compensate Plaintiff for failure to do so and (2) whether Defendants had not done so because they were fraudulently concealing the fact that they did not have the certificates, are both part of the same "nucleus of operative fact" because they are "related in time, space, origin" and "motivation." *Id.*

Plaintiff argues that *res judicata* does not apply because he is now asserting fraud, which he says is a "a totally fresh claim based on new facts and evidence," Dkt. 31 at ¶ 38, and maintains that while he "may have been complaining that DTC held counterfeit securities certificates" all along, he was not able to prove these allegations until later.  Dkt. 31 ¶ 38.  He says he "always had suspicions, but lacked evidence" until 2017 when DTC was ordered to provide the certificates in a separate New York Civil Court case, *Winter v. Lafferty* (certificates which Plaintiff says he can prove are inauthentic).  *Id.* at ¶ 48.

However, the production of the certificates in *Winter v. Lafferty* has no bearing on the application of *res judicata* to Plaintiff's claims here.  As explained above, Plaintiff's fraud claim arises out of the same set of facts as his previous claims before FINRA, and it is the "identity of facts surrounding the occurrence which constitutes the cause of action" that determines if *res judicata* applies, not the legal theory that he describes in his Amended Complaint or the availability of additional evidence.  *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir.1992).

To be sure, while it is true that in some cases newly discovered evidence will prevent the application of *res judicata* if "the evidence was either fraudulently concealed" or "could not have been discovered by due diligence," *In re Layo*, 460 F.3d 289, 293 (2d Cir. 2006), that exception only applies if the concealment prevented the Plaintiff from being able to raise the issue at the first proceeding.  *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) ("[N]either of

11

these exceptions is relevant" where "even without the newly discovered evidence," the party had "sufficient notice" of "the essential facts.").

These exceptions therefore do not apply because Plaintiff was not prevented from raising the issue of the certificates before FINRA. He *did* raise the issue, or the very least at least his submissions to FINRA during the arbitration "demonstrated his awareness of the possibly fraudulent nature of" Defendants' statements. *Saud*, 929 F.2d at 920.. (Though these documents are not attached to Plaintiff's Amended Complaint, Plaintiff has expressly stated that he has "no issue" with the Court "taking judicial notice of these filings." Dkt. 30 at ¶ 32.).

Plaintiff stated to the FINRA arbitration panel in 2015:

> "If [Defendant TD Ameritrade] obtained a court order for the DTC to release my Bancorp shares . . . It would be the perfect solution provided of course those certificates at DTC exist and are real. There is no risk to the investing public, the DTC, or their participant's, if the lock was lifted. All that would happen is that those certificates the DTC claim to have would be verified, and that is what I believe is the problem for TDA. The DTC does not have real certificates . . . If TDA really want to get my Bancorp shares from the DTC, it begs the question why TDA has not obtained a court order for the release of its customers Bancorp shares from the DTC and instead fights customers and incurred such high legal fees and bad feeling. If TDA really do have hundreds of millions of genuine Bancorp shares at the DTC, why has TD Ameritrade not asked the DTC to release my shares or obtained a court order getting the shares out of DTC?"

Dkt 26, Exhibit 5. Plaintiff also made a discovery request to subpoena Defendants for the certificates. *See* Dkt. 31 at ¶ 37 (noting that he requested that "the FINRA panel subpoena both TDA and the DTC to produce copies of the BCIT certificates in question."). And the FINRA panel was aware of Plaintiff's claim that Defendants were concealing the true reason why the shares could not be delivered and rejected it. In the award, the Panel stated that it understood Plaintiff to be arguing that TD Ameritrade was "willfully refusing to comply with their statutory duties . . . and has misled Claimant as to why," and nonetheless determined that Defendant TD Ameritrade fulfilled all its responsibilities and duties to Plaintiff. Dkt. No. 17, Exhibit 10.

Therefore, the "recently discovered" information from the production of the certificates in the *Winter v. Lafferty* case – or, in other words, the confirmation of alleged facts to which Plaintiff already believed to be true – was not "necessary to raise the issue" before FINRA. *Levin v. Frank*, 803 F. App'x 562, 563 (2d Cir. 2020). Plaintiff was already aware of the facts surrounding his fraud claims during the arbitration, those claims were originated from the same nucleus of operative fact as his other claims before FINRA, and FINRA was an appropriate forum to bring those claims. Thus, *res judicata* now bars Plaintiff from bringing them here.

Finally, the Court notes that if it were true that the new information that came to light in *Winter v. Lafferty* shows that the FINRA panel's denial of Defendant's discovery request or final adjudication on the merits was wrong, a matter on which the Court takes no position, that would not change the outcome here. "[R]es judicata consequences" are not "altered by the fact that the judgment may have been wrong." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The fact that FINRA's determination not to subpoena the certificates may have been "an erroneous conclusion" does not "deprive the defendants . . . of their right to rely upon the plea of res judicata" before this Court. *Id.*

### 4. Plaintiff has failed to state a claim for fraud against either Defendant

As explained above, Plaintiff makes claims for common law fraud or violations of SEC Rule 10b-5 against both Defendants. He generally argues that Defendants "misrepresented the number of real Bancorp share certificates," because they in fact have only 806 shares in order to "cover a liability of more than 328 million shares." Dkt. No. 17 at ¶ 48. Plaintiff claims that he "made reasonable inquiry with both Defendants" about the shares "and was lied to repeatedly by TDA and employees of the DTCC not just in letters and emails but by legal testimony and representations made to courts and FINRA arbitration." *Id.*

13

"To bring a successful claim under Section 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must allege sufficient facts to establish that a defendant (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." *In re Stemline Therapeutics, Inc. Sec. Litig.*, 313 F. Supp. 3d 543, 548 (S.D.N.Y. 2018) (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 106 (2d Cir. 1998)). Moreover, "[t]he elements of common law fraud [] are largely the same as those of a Rule 10b–5 claim except that there is no requirement that the fraud be in connection with the purchase or sale of securities." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 592 F. Supp. 2d 608, 623 (S.D.N.Y. 2009) (internal quotations omitted).

Moreover, the Federal Rules of Civil Procedure Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This heightened pleading requirement applies to Plaintiff's common law fraud claim and SEC Rule 10-b claim.  *See Indiana Pub. Ret. Sys. v. SAIC*, Inc., 818 F.3d 85, 92 (2d Cir. 2016); *Filler v. Hanvit Bank*, 2003 WL 22110773, at *3 (S.D.N.Y. Sept. 12, 2003). Under Rule 9(b), "[t]o satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (internal quotations omitted).

The Court identifies two types of statements from the Amended Complaint that Plaintiff is alleging constitute fraud.  The first set of statements are those from Defendant TD Ameritrade to Plaintiff.  Plaintiff alleges that he was "lied to repeatedly by TDA and employees of the

14

DTCC," in letters and emails about the share certificates. Plaintiff does not provide any more detail as to the nature of these letters and emails in the Amended Complaint, but he attaches three emails from TD Ameritrade as exhibits, in each of which a TD Ameritrade representative tells Plaintiff that the lock is in place and share certificates cannot be delivered. *See* Dkt. No. 17, Exhibit 2. The second set of statements are those from both Defendants to others. Plaintiff alleges that Defendants "lied" by giving "false evidence to the SEC, the courts, and FINRA" about the share certificates. In particular, during the FINRA arbitration "TDA produced affidavits from Mr James Femia, a Managing Director at DTC & Ms Aimee Bandier, a Senior Associate Council at DTC, stating that the DTC hold 117,427,010 Bancorp shares for TDA" and that "these shares were held in certificate form in the name of their nominee Cede & Co." Amended Complaint ¶ 20-21.

None of these alleged statements can form the basis for a fraud claim.

As to the first set of statements sent from Defendant TD Ameritrade to Plaintiff via email, these are not material misstatements. Nowhere in these correspondences did Defendant TD Ameritrade state that there were sufficient physical certificates on hand at DTCC to cover his shares, or otherwise discuss the amount or nature of the physical certificates at all. Moreover, though he references "omissions" generally, Plaintiff does not say in his Amended Complaint that Defendant TD Ameritrade made a material omission by failing to inform him of the alleged lack of certificates in these emails. For that reason, this claim should fail under Fed. R. Civ. P. Rule 9, which requires Plaintiff to "specify the statements that the plaintiff contends were fraudulent . . . [and] explain why the statements were fraudulent.'" *Employees' Ret. Sys. of Gov't of the Virgin Islands*, 794 F.3d at 305.

Moreover, even if Plaintiff had stated explicitly that the letters contained a material omission, such an omission would not form the basis for a 10b-5 fraud claim.  Under SEC Rule 10b-5, in order for "an omission to be actionable, the securities laws must impose a duty to disclose the omitted information." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).  For example, "[t]he disclosure duty may be based on an affirmative obligation set by regulation or statute, or it may derive from a necessity to avoid misleading statements []." *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 472 (S.D.N.Y. 2018).  Assuming for the purposes of this motion it were true that Defendant TD Ameritrade knew that there were insufficient certificates on hand at DTCC, Plaintiff has not alleged that Defendant TD Ameritrade had any duty to disclose this information to him.  (The only duty Plaintiff references is that of fiduciary duty, but as explained above that claim is barred *res judicata* by the FINRA arbitral panel's determination that either no such duty existed or that it was not otherwise violated.).  And though Plaintiff alleges that the lack of physical shares on hand is the real reason why Defendant TD Ameritrade refused to deliver him his shares, as opposed to the lock, the fact that information is relevant or important to Plaintiff does not in and of itself create a duty to disclose, because "[a] corporation does not have a duty to disclose information simply because it is material." *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 434 (S.D.N.Y. 2018) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44, (2011)).  Nor would the fact that Defendants may have been violating laws or regulations by failing to maintain adequate physical share certificates create a duty either (though Plaintiff does not specify any such laws or regulations), as a corporation is not automatically required to "disclose illegal internal policies . . . or violations of the corporation's internal codes of conduct and legal policies." *Id.* at 441 (citations omitted).

As to both the first set of statements from Defendant TD Ameritrade and the second set of statements from the Defendants to the SEC, courts, and FINRA, Plaintiff cannot bring a claim for fraud because he has failed to show that he relied on them and that the reliance caused his injury. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005); *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 2001 WL 487111, at *13 (2d Cir. 2001). Plaintiff's Amended Complaint demonstrates that he did not rely on the statements at all. He does not claim that he engaged in any securities transactions as a result of Defendants statements, that he took any other action in reliance, or even that he even believed the statements to be true. To the contrary, Plaintiff "always had suspicions," Dkt. No. 31 at ¶ 48, that Defendants alleged statements were false and affirmatively acted on these suspicions by pursuing his allegation that the certificates were fake before FINRA and attempting to obtain the certificates in discovery.

Plaintiff says he "reli[ed] on organizations like Defendants to tell the truth" as a general matter, but that is insufficient. He must show that "the misrepresentations directly caused the loss" to which he complains. *DoubleLine Capital LP,* 323 F. Supp. 3d at 461. He cannot do that here because, regardless of the reason that Defendants did not want to deliver the certificates, the FINRA arbitration panel determined conclusively that Defendants did not have to, and that determination is given preclusive effect in this Court. *See supra* II.B.3. The FINRA panel explained that Plaintiff "failed to establish with any credibility" that his "requests for cure shares from DTC or [TD Ameritrade] would not be illegal and/or impossible" because of the lock and therefore denied his requests for relief with prejudice. Dkt. No. 17, Exhibit 3. Whether or not the physical share certificates exist, Defendants are not required to deliver them, and therefore Plaintiff cannot make a claim for fraud here where he suffered no loss as a result.

C.  **Motions to intervene**

17

Since the filing of the Complaint and Defendants motions to dismiss, various individuals have made motions to intervene in this case. *See* Dkt. Nos. 33, 35, 46, 47, and 53. The potential intervenors are all persons who, like Plaintiff, bought Bancorp shares through Defendant TD Ameritrade. *See id.*

The motions to intervene are dismissed along with Plaintiff's Complaint because "where the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot." *Kunz v. New York State Comm'n on Judicial Misconduct*, 155 F. App'x 21, 22 (2d Cir. 2005). *See also Barcia v. New York State Unemployment Ins. Appeal Bd.*, 715 F. App'x 57, 59 (2d Cir. 2017). Moreover, the Court has "broad discretion" in considering permissive intervention motions, *see AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005), and would otherwise not have granted them. A motion to intervene must "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. Proc. 24(c). While the motions here parrot the language from the requirement in Fed. R. Civ. Proc. 24(b)(1)(B) that they have a claim or defense that shares with the main action and question of law or fact, none of the motions actually state any claim or defense, nor do they attach a formal pleading as required under the rule. *Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 760 (2d Cir. 1968) (affirming dismissal because the motion to intervene "was not accompanied by a pleading as required by Rule 24(c) of the Federal Rules of Civil Procedure.").

### III.  Conclusion

For the reasons stated above, Defendants motions to dismiss Plaintiff's Amended Complaint with prejudice is GRANTED and the motions to intervene are DENIED. This

18

resolves docket numbers 6, 19, 24, 33, 35, 46, 47, and 53.  The Clerk's Office is respectfully directed to mail a copy of this order to the Plaintiff and close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: November 30, 2020
       New York, New York

ALISON J. NATHAN
United States District Judge